SILAS K. SIMMONS ET AL. *v.* FRANCIS L. GORDON ET AL.

[53 South. 623.]

TENANTS IN COMMON. *Judgment creditor of one. Partition.*

> A partition of lands by agreement between tenants in common will not bind a judgment creditor of one of them, if made after the lien of the judgment became operative or the debtor's interest in the lands had been levied upon under execution.

FROM the chancery court of Lauderdale county.
HON. SAMUEL WHITMAN, JR., Chancellor.

Simmons and others, appellants, were complainants in the court below; Gordon and others, appellees, were defendants there. From a decree in defendant's favor complainants appealed to the supreme court. The facts are stated in the opinion of the court.

*Witherspoon & Witherspoon,* for appellants.

The judgments were obtained against Mrs. Houser before her father's death. When he died she inherited a one-eighth interest in the estate. This was of course an undivided interest in the whole estate and the claim is that she could not enter into a partition agreement with her co-heirs by which she took an exclusive title to a part of the estate in the place of her undivided interest in the whole so as to bind her judgment creditors.

On principle we see no reason for any such rule. We see no reason why the judgment debtor should not exercise his right of dividing the estate into equal parts and taking his share of the same, or why his judgment creditor should not be bound by his selection of a share out of the inheritance, and his converting by agreement the imperfect interest in the whole of the estate into a perfect title to a part of the estate. The selection by the

judgment debtor of his share of the estate which he holds in common with his co-heirs can be nothing but a benefit to both his judgment creditor and himself, provided he chooses a share of equal value with the shares allotted to his co-heirs, and the bill in this case alleges and the demurrer admits that the share allotted to her is the same as that to her seven brothers and sisters.

There could be no reasonable objection to the debtors selecting a share worth exactly what he is entitled to. The judgment creditor could certainly not demand that his debtor in order to have a fund to satisfy the judgment, should receive more than such just and equal share. So that under the facts alleged in the bill both debtor and creditor are as a result of allowing the debtor to select his one-eighth share of the estate, placed in the exact position that equality and justice requires.

To hold that a family, one member of whom had a judgment against her, should not be allowed to enter into a partition agreement by which each heir could segregate for his individual use and enjoyment his just and equal share of the said estate, but would have to enter into partition proceedings and litigate the matter of the division of the estate with judgment creditors of one of the heirs would be an injustice to the rest of the heirs.

Code 1906, § 3539, is an express enactment that a lien created by one of the joint tenants shall attach to his share which he receives by a partition of the estate which he inherits, and his share only.

This section plainly excepts the shares of all other tenants in common from any lien on account of a judgment against one of them, and seems to us to expressly enact our contention that a judgment creditor is bound by a partition between the judgment debtor and his cotenants. This section seems to be merely a legislative enactment of the common law rule in such cases.

*Baskin & Wilbourn, J. F. Barbour,* and *F. V. Brahan,* for appellees.

The judgments were in force at the time Mrs. Houser acquired her undivided interest in the lands upon the death of her father in the summer of 1909, and it is further true that the executions were issued and the levies were made and the sale advertised to take place under the levy, the date of the sale being January 3, 1910, all before the actual execution and delivery of the alleged partition agreement of the heirs of G. B. Simmons, which was not executed until December 27, 1909, and before said instrument was ever filed for record.

The bill does not allege that the judgment creditors of Mrs. Houser had any actual notice at the time of the issuance of their executions, nor at the time of the levy of said execution, nor at the time of advertising the sale under the executions, that any partition agreement had been made, or was even in contemplation. There was, therefore, no actual and no constructive notice of the alleged attempt of the heirs of G. B. Simmons to partite his property alleged to have been made November 1, 1909, on the part of the appellees prior to the issuance and levy of the executions and advertisements of the sales thereunder.

The appellees, who are all of the heirs of G. B. Simmons, excepting the defendant in execution, Mrs. Houser, filed this bill to enjoin these sales.

The action of the chancellor was correct. In the first place, no property of the appellant's was sought to be sold, only the property of the defendant in execution. In the next place, no right of the appellant's was violated by the issuance and levy of the execution and advertisement of the sale. In the third place, there was no partition of the property consummated until three or four days before the date fixed for the sale of the property, and the judgment creditors had no notice, legal or constructive, that any partition of the property was even

contemplated, among the heirs of G. B. Simmons. In the fourth place, regardless of whether the partition was satisfactory to the various heirs of G. B. Simmons, and regardless of the question as to whether or not it was a fair division, there was no right under the law or the statute in the defendant in execution and other heirs of G. B. Simmons to enter into an agreement to divide the estate to which the judgment creditors were not a party. In the fifth place, the appellant studiously avoided making judgment debtor party to their bill, whereas we contend she is a necessary party. In the sixth place, several of the appellants did not sign the injunction bond and were not entitled to any injunction.

The precise question involved in this case was very carefully considered and passed upon in the case of *Emson* v. *Polhemus,* 28 N. J. Eq., § 439. In that case it was held, "A voluntary partition by tenants in common will not prevail against the lien of a judgment against one of such co-tenants rendered prior to such partition."

WHITFIELD, C.

The appellants filed a bill in the chancery court of Lauderdale county, State of Mississippi, to enjoin the sheriff of Lauderdale county and appellees from selling the undivided interest of Mrs. M. S. Houser in and to certain lands which had been levied upon by the sheriff under an execution issued upon judgment in favor of F. L. Gordon & Co., a firm composed of F. L. Gordon, G. R. Upshur, and W. C. Fleming. The bill alleged, in substance, that the judgments in favor of the appellees were obtained against Mrs. Houser in the lifetime of her father, G. B. Simmons, and that, after the judgments had been obtained against Mrs. Houser, her father, G. B. Simmons, died seized and possessed of lands and a large amount of personal property situated in Lauderdale county, state of Mississippi; that Mrs.

Houser and appellants were heirs at law of the said G. B. Simmons, and of course inherited an undivided interest in his estate. G. B. Simmons died in the summer of 1909. The bill alleges that on the 1st day of November, 1909, the heirs of G. B. Simmons agreed among themselves upon a partition in kind of real and personal property of the decedent, G. B. Simmons, whereby certain of the property was set off to each of the various heirs; but the agreement of partition, set up as an exhibit to the bill, shows upon its face that it was not executed until the 27th day of December, 1909, and not filed for record until the 29th of December, 1909. In the meantime executions had been issued in November, 1909, upon the judgments in favor of the appellees, which the bill charges were procured prior to the death of G. B. Simmons; that is prior to the summer of 1909.

One of these judgments was a circuit court judgment, and the executions were issued in both instances by the clerk of the circuit court of Lauderdale county. It is not charged in the bill that these judgments were not enrolled properly. It is not charged that they were not liens upon the property by virtue of the enrollment upon the death of the father of Mrs. M. S. Houser, and at the time the defendant in execution, Mrs. M. S. Houser, acquired an undivided interest in the property. It is clear from the pleadings that the sales were to be made on the 3d day of January, 1910. One of the levies was made on the 19th of November, 1909, and the other on the 15th of December, 1909. Under these two judgments, from this statement of facts, it is plain that these judgments were in force at the time that Mrs. Houser acquired her original undivided interest in the lands upon the death of her father in the summer of 1909; but it is also plain that both the executions were issued, and both the levies made and the notices for the sale posted, and the sale advertised to take place under the levy, January 3, 1910, all before the actual execution and de-

livery of the alleged partition agreement between the
heirs of G. B. Simmons, which partition agreement was
not executed until December 27, 1909. And it also ap-
pears that all these proceedings looking to the sale of
the land took place before the partition agreement was
ever filed for record, and it nowhere appears that the
judgment creditors of Mrs. Houser had any actual notice
at the time of the issuance of their executions, or at the
time of the levy thereof, or at the time of advertising
the land for sale, that any partition agreement had been
made or was contemplated. The appellees, who were,
all of the heirs of G. B. Simmons, except the defendant
in execution, Mrs. Houser, filed this bill to enjoin these
sales, and obtained an injunction, which was served on
the day of the sale, after all the expenses of the levy
and advertisement had been incurred. The bill does not
question the validity of the executions, nor the existence
of the judgment liens, but is predicated solely on the
ground that the eight heirs of G. B. Simmons, deceased,
had made a voluntary partition by agreement between
themselves, and that these judgment liens could attach,
therefore, only to the part allotted to Mrs. Houser. The
appellees demurred to the bill, and moved to dissolve
the injunction. Their demurrer was sustained, and the
injunction dissolved, and damages were awarded on the
injunction bond.

The controlling question presented for decision on
these facts is this: Can tenants in common, against one
of whom a judgment lien has attached prior to any par-
tition by agreement, which judgment lien has been levied
upon the undivided interest of that tenant in common in
the whole land prior to any partition by agreement, make
a voluntary partition by agreement that shall bind the
creditors? We are clearly of the opinion that this can-
not be done. We think the case of *Ephriam Emson* v.
*Job Polhemus*, 28 N. J. Eq. 439, the opinion in which was

98 Miss.—21

delivered by Chief Justice Beasley, is decisive of the
correctness of the view we have taken. That court said:
"A creditor by his judgment, and a mortgagee by his
deed, gets a lien on an undivided interest in the land
of his debtor, which gives him a fixed and immediate
interest, and which is in all respects paramount, as far
as it extends, to the right of the debtor in the property.
It is obviously undeniable that these lienholders will be
materially affected by the allotment of the particular
part of such property to which their lien is to be affixed
by the law. If the ascertainment of such part be made
by an appeal to the judicial power, such creditors have
satisfactory guaranties that the division of the land will
be fair and just; and hence the propriety of the provi-
sion of the statute of this state that if, at the time of
making partition, a lien exists 'upon the undivided es-
tate of any owner, by judgment, decree, mortgage or
otherwise, such lien shall thereafter be a lien only on
the share assigned or allotted to such owner.' Revision,
p. 804, § 36." And it should be remarked, in passing,
that the presence in the statute of a direction of this
kind appears to intimate that an express statutory dec-
laration was necessary to affect the claims of the lien-
holders, even by a judicial division of the land among
the owners. And the question, therefore, is forcibly pre-
sented, Why should this same force be imparted to the
self directed act of the debtor? In such case what assur-
ance has the creditor that his rights will be adequately
protected?

"The general rule is, as was said in *Agar* v. *Fairfax*,
17 Ves. 543, that partition never affects the rights of
third parties; and the more I have reflected on this sub-
ject, the less I have seen in favor of the proposal to
affect the mortgagee or judgment creditor by the volun-
tary partition of the debtor. I can yield no force at all
to the suggestion that 'the fact that the parties to the
partition may be compelled to partition by legal pro-

ceedings is a sufficient ground for upholding such a voluntary partition as would have been made by law.' Such a rule, and the reasoning that supports it, would validate a partition, if a fair one, which should be made by a single tenant in common as against his cotenant. Nor can I perceive why, because an infant to a certain extent, and retaining a qualified power when of age of repudiating the act, may bind his own interest by joining in a partition, a tenant in common should be permitted by his act, not only to affect his own interest, but likewise the interest of the non-assenting creditors. The terms of these several propositions appear to my mind to have nothing in common, and consequently the legitimate deduction that may be made from the one is no warrant for drawing a similar conclusion from the other.

''The principal argument, however, which is urged to uphold the power of the debtor to make a partition by his private action that will be obligatory on his creditors, who hold a lien on the land, is that, if the partition thus made is not fair, it can be set aside. But this contention will, upon examination, be found to be destitute of all real force. It substitutes a remedy for a wrong committed in the place of a remedy against the commission of such wrong. The safeguard against an unfair separation of the rights of the cotenants, which in a judicial procedure is provided, is the substitution of the judgment of discreet and unprejudiced men instead of the notions of the owners of the property. The proposed rule would take away from the creditor this safeguard, and in lieu of it place in his hands the cumbersome privilege of overhauling, if he can show unfairness, the act of the cotenants. All persons will see that by such substitution the creditor is placed at disadvantage, and has, in reality, lost a valuable right. The fact is, the creditor should have both rights, viz., the right to a partition by unprejudiced persons and the right to litigate an unfair partition, even if made by such persons. But the con-

tention in question deprives him of the former of such rights, and gives him no equivalent.

"There is a further objection of magnitude. The rule proposed would leave the lienholder subject to the caprice or folly of his debtor in the act of agreeing to partition. When a tenant in common is competent to contract, his agreements with his cotenants respecting the partition of his land are as binding upon him as are his contracts on any other subject. In the absence of fraud, an unequal partition, assented to by such tenant, is not in legal estimation an unfair one, that will be set aside. If, by the exercise of a superior judgment, certain of the tenants in common gain an advantage, the proceeding, on that account, is not invalid. 'If co-partners, joint tenants, or tenants in common seized in fee simple, make partition, it is good forever, though the value of the different shares taken in severalty be unequal.' Such is the rule as propounded by Allnatt, p. 30. The consequence is that the lienholder, if the rule contended for is to prevail, will, in place of the discretion of men selected judicially, be thrown on the judgment of the debtor, and will be bound by the exercise of such judgment, in the absence of actual fraud, whether such debtor be a frivolous person or a man of sense. In the absence of controlling authority, it is not perceived why the judgment creditor should be placed in a position so unfavorable.

"There are many other objections, which, on reflection, will present themselves. A partition would often be of a kind which, while it would be perfectly fair and just between the parties, and which, therefore, could not consistently with established rules be set aside, yet would be quite ruinous to the interests of the creditors. For example, in a case where the cotenants agree to divide between themselves the rooms of a house, such distribution is entirely legal, and, if the power to make a voluntary partition exists at all, could not be impeached;

and yet such an interest, regarded as a salable article under an execution, might be of little value.

"Conceding to the judgment debtor the capacity to make voluntary partition, what is to be done with arrangements of this nature? It is obvious they would be valid in law, and they would have to be sustained against the judgment creditor or mortgagee. So, I think this power of partition, if it existed, would often be turned to purposes of fraud and vexation. Suppose a creditor has advertised for sale, by force of his judgment and execution, the undivided interest of his debtor in certain lands, and on the eve of such sale he would ascertain that his debtor has made a division of such land with the cotenants which he deems unfair—what is his remedy? Certainly a most oppressive and inefficient one. All that he could do would be to stop his proceedings under his execution, and file his bill in equity to test the fairness of such partition. All persons can see that such a remedy would not often be resorted to, unless where the unfairness was very gross and the consequent loss to the creditor of magnitude. By such a practice ordinary frauds could be perpetrated with absolute impunity. I have little doubt that, if it were known that the debtors have the power which is claimed by the respondents, these partitions, unfair upon their very face, would oftentimes be made in order to procure a virtual stay of execution, by driving creditors, who were about selling under their judgment, into a court of equity to obtain a redivision of the property before exposing it for sale.

"All these evils and iniquities will be avoided by holding that the debtor, after mortgage or judgment, cannot make a voluntary partition which will bind such lienholders. Such a doctrine imposes no hardship on the debtor and his cotenants. If they desire a separation of their interests, they can pursue the legal formulary. That method is simple, expeditious and inex-

pensive, and by its use the interest of all parties, those of mortgagees and judgment creditors, will be protected."

We approve this reasoning as thoroughly sound. Section 3539 of the Code of 1906 relates to liens created by contract, and not to judgment liens, and, besides, the last clause provides for the assertion by the lienholder of his claim to owelty awarded to the tenant, whose interest is subject to the judgment lien. This provision, with relation to owelty, would seem to indicate that that section applies only to partition by judicial procedure. But we do not decide this, since it is not necessary to decision.                                    *Affirmed.*

PER CURIAM. The above opinion is adopted as the · opinion of the court, and for the reasons indicated therein the decree is affirmed.